now you're ready good morning your honors may it please the court Ashwini Mate representing William Veronin and I will try to reserve two minutes of my time for rebuttal your honors unless you have other questions about the other issues in this case including the fugitive disentitlement doctrine I intend to focus my comments today on this court's improper on the district court's improper delegation of judicial power to the commission I think I think we uh I at least have a question about the fugitive disentitlement doctrine that we got a letter from the government on I believe it was January 24th that Mr. Veronin is still at large to your knowledge is that does that continue to be the case today to my knowledge I mean I believe Mr. Veronin has been in contact with this probation officer and again I believe he's still in the jurisdiction of this court nothing in the bench warrant indicated that he had fled the government hasn't proven that he's actually fled the jurisdiction of this court in fact the last time they argued the fugitive disentitlement doctrine applied here Mr. Veronin was found in the exact area the bench warrant indicates that he could be found now so you know I think this is a very messy application of the fugitive disentitlement doctrine the more traditional application is you know the government has proven that a client has escaped custody or has fled the jurisdiction of the courts and in fact the uh this court has held for the fugitive disentitlement doctrine to apply we require some further showing that the defendant has fled or has hidden himself in the jurisdiction of the court and that just isn't the case here well but the the warrant was issued has the warrant been executed not as far as I know your honor and do you know I mean do you know where he is like right now we believe he is somewhere in the location indicated in the bench warrant in Whittier which is precisely where he was found before okay but counsel I I know it's tough here but you said we believe that's not the same as we know so I take the answer is you don't know where he is right now your honor I wasn't privy to the phone conversation that he had with his probation officer but I'm under the impression that they know that he is in that location okay again the question was do you know where he is and I take the answer to that is you do not know I don't know okay but again your honor it seems as if I'm sorry no I guess what I'm trying to circle back to as well as I'm not sure really what we're trying to accomplish here and here's why I say that as I understand it your client was sentenced to 60 days your client served that time you want us now to do what well your honor remand with instructions for the district court about how to you know about you know in particular this condition which delegates the probation officer the ability to determine whether Mr. Veronin should go into a residential re-entry center which is a halfway house under the BOP and more importantly for how long he I mean it's a I've never before seen a condition where a probation officer is permitted to determine how long a in a residential re-entry center all right so if your client were to show up tomorrow I mean it's kind of hard to remand this to the district court when we don't know where your client is but if we if we send this case back to the district court what argument that you're making to us now could you not make to the district court tomorrow your honor I think without instruction from this court the court could you know still reimpose the same condition I mean I as far as I know there's a possibility that the condition imposed in this case or the improperly delegated condition is the source of the violation petition again we're not privy to the violation petition they are filed under seal so I don't know for a fact and I can't state that before this court but it could very easily be the source of his current violation which if this court were to find that that condition was improper would mean that this current violation would go away and you could make but you could make all of those arguments to the district court correct we could your honor but it would be probably easier for this for this court to issue that kind of you know guidance for the district court to follow since you know it didn't matter in the first instance so you understand then the risk though is that let's say it goes back to the district court and the district court says okay you're right I'll change the halfway house but I'm now going to sentence your client to six months in prison that could happen even though he's already served the 60 days and he's he's he's done with that the risk is that by carrying through this appeal he could get more time and that's why I'm a little puzzled why why you're pursuing this I mean your honor I think that there would be other arguments we can make about why custody would be inappropriate in this context I mean they were the same arguments that were made below I think we made them even on appeal with respect to the tapia error so I mean it's a risk we take but there are limitations to what district court can do and I think guidance from this court about how they would have to conduct that hearing would be helpful beneficial but I guess what I'm trying to figure out here is that if if there's been no real contact with your client and now there's this second petition it seems like there's a lot of discussions that would need to go on with your client about what he should be doing right now in this appeal because it could affect everything and if those conversations haven't happened it just I don't know I'm still I'm still a little puzzled as to why this appeal is being pursued considering he spent the six days but I but that's ultimately that's I guess that's your call I'm in your honor you know we are under an obligation to pursue an appeal if our client files a notice of appeal and until and unless they indicate to us that they don't wish to pursue it but if you're not but if you're not in contact with the person doesn't that kind of beg the question whether this is the circumstances have changed right since there's a note there's a change a lot since the notice of appeal was filed and I take it there haven't really been any ability to communicate with him to say hey you know what that was then this is now without telling us what those communications were and again you're in a tough spot here I'm not I'm not faulting you at all you're in a very tough spot but I don't I I'm this is maybe more Judge Christensen's land what he has to deal with every day than what I have to deal with now but it just you know I'm just a little concerned about where this case is going here but anyway that's just me and let me ask you let me ask you a couple of questions I don't want to relive uh the the actual revocation hearing itself the proceeding uh but where was Mr. Veronin at the time of the revocation proceeding he was not in custody was he no he was on the street on the phone um with his cousin with his cousin and uh and of course the cousin has played a role as I understand it in Mr. Veronin's well-being uh where was Mr. Veronin's lawyer at the time was she or he or she at his side or on a separate phone somewhere they were on a separate phone okay and was this um what was the um what was the protocol standing order in the central district to California when this proceeding occurred were people coming into the courthouse in person or was everything being done remotely I believe um that most things were being done remotely at that time and at this in this case there was a document that was being required that council were being required to stating whether or not they would consent to proceed by video or telephone and that was I looked at the docket that was filed in this case um so going to Judge Olin's uh question because I've had the same I've been struggling with this your I can't understand what it is that you want Judge Hatter to do if we were to remand this case I mean what's going to happen um if we remand it I mean I my hope is that Judge Hatter you know through the arguments of counsel and the guidance of this court would understand that you know custody and further supervision is inappropriate in the context given this client's extensive history of mental illness okay and that argument was made that argument was made at the time of the initial revocation hearing Mr. Veronin's counsel made a very strong argument that the system simply is not equipped to deal with his mental health conditions and advocated that he be turned out and Judge Hatter expressly stated you know I'm going to I'm going to give this one more try because I think we we are acting in the best interest of Mr. Veronin and um and I'm going to two months of custody and then we're going to keep him on supervised release for what 16-18 if you are still homeless you shall reside for a period not to exceed 365 days in a residential re-entry center you shall observe the rules etc of the facility and he said any fee associated that will be waived due to your lack of financial ability to pay so it sounds like what you would like to do is is redo what's already been done as it relates to Mr. Veronin correct yes your honor with respect to that condition in particular well isn't he empowering the probation office to essentially look at the situation when Mr. Veronin gets out if he doesn't have a place to live then the probation office with this condition in place then has the discretion to put him into a residential re-entry center I mean that's the way this works I think it's it's not mandatory uh it's empowered it's it's a condition that allows it's like it's like substance abuse treatment or mental health treatment we impose these special conditions and and let our probation officers exercise some discretion and some judgment as to what what the defendant needs at that point in time after they've completed the custodial sentence right well your honor I don't think I've seen a condition quite like this where they're empowering the probation officer to determine whether or not he's actually subject to the condition I think the law and you know and I think more importantly for how long you know that the district court didn't create a set term they simply said not to exceed 365 days so if the probation officer determines that Mr. Veronin is homeless based on their you know understanding of that concept you know maybe couch surfing counts maybe it doesn't maybe one day on a couch counts maybe it doesn't you know they could the probation officer is then empowered to effectively sentence Mr. Veronin to one month in a quasi-custodial environment two months three months and then what's Mr. Veronin to do can he prove that he's no longer homeless to the probation officer in order to be released earlier than the 365 days I think this is a rather troubling condition and in my experience there's usually you know at least I mean probation officers have the power to you know interpret some of these conditions but the result is that they only get to violate the defendant and then the defendant goes into court and gets to invoke the adversarial process and the judicial power of the courts who ultimately sanction him in the in this condition the probation officer is essentially being made you know the judge jury and executioner for lack of a better phrase and so I think that makes this a very and highly problematic delegation of the court's judicial power in the context of this condition okay one final question has there been a new petition to revoke Mr. Veronin been filed so we are not privy to that information it's you know if a petition has been filed it's been filed under seal we can only assume that when a bench issues that a petition a violation petition is usually accompanying that but I don't actually have you know that information or what the grounds of that petition would be okay thank you all right we'll give you a minute for rebuttal okay thank you and counsel for the government may proceed good morning your honors may it please the court assistant united states attorney maria jai on with respect to the fugitive disentitlement doctrine the government shares uh the court's uh expressions of concern about what would happen upon remand um I want to note at the outset that the concerns of the fugitive disentitlement doctrine doctrine are partially grounded in the enforceability of the court's judgments here we have a defendant who is absconded and is wanted on a bench warrants he will inevitably be brought back before the district court where issues raised um potentially objections to certain conditions could be could be ventilated with the district court um uh so the quest but the the nonetheless even if this court were to have a to issue a decision that circumstance doesn't change um and the defendant is still missing and has in that sense removed himself from the jurisdiction of the court it's not a matter of whether he's residing or could eventually be located in the central district it is uh that he is um his whereabouts are unknown and that's the information that the government received and put in its letter to the court um in response to the court's inquiry do you know whether do you know whether or not he has been in contact with his probation officer in the last few days i don't have that information i had the one conversation following up on the court's request for information about the status of his uh supervision and the information that i received is was conveyed in the letter i understood at that time that his whereabouts were unknown and then a bench warrant had issued and i haven't followed up further i'm getting the impression from listening to um counsel um from mr verona this morning that um it appears as if he has not been arrested i mean i don't know what goes on um down here and you know wherever in los angeles or wherever we are but um is it is it not uncommon that homeless people uh that may be subject to the court's jurisdiction or may be subject to an arrest warrant are just simply not arrested for a period of time well i so mr verona is on supervision so there's a certain to the extent somebody's saying his whereabouts are unknown it's not because an arrest warrant issued and he wasn't able to be found things preceded that so there's a an inability to know his location in advance and the other thing to direct your honor's attention to is the confidential sentencing documents which are the violation report and that gives some background in terms of um difficulties so is the probation office reported there from the outset of supervision mr veronin was uh homeless um and there were difficulties enforcing the the um court's orders and supervision because he could not be found uh by the probation officer and he didn't report um so uh i i'm not sure the difference if you have a defendant who is number one not complying with the terms of supervision and showing up when he's supposed to number two as the violation report indicated had a place to live had places to live arranged for him and uh chose not to to reside there with the result that he was out of out of reach of supervision and i think that's the circumstance that we're in with respect to uh the status of efforts to to affect this arrest warrant i i don't have information about that it certainly doesn't change mr mr veronin's status in terms of of not being subject to um if the court doesn't have any further questions about that i do want to address the uh impermissible delegation argument um two points in particular actually three so number one um the determination whether somebody is homeless is is not discretionary it's not a a vesting of unreasonable discretion in the probation office it's actually pretty standard and one place to look is the um original judgment in this case which is at er 24 and there's a standard condition number six that requires the defendant to reside in a location approved by the probation officer that's the same kind of discretion we're talking about here but here it's actually narrower and we can see sort of the background of why that condition exists in this case because of mr veronin's history of of being homeless and therefore being difficult to supervise which is the probation officer's job um but so the determination here is is he homeless if he's if he is homeless the condition provides he shall reside in an rrc a residential re-entry center excuse me what condition is that i'm looking at the original judgment it should be er 24 standard condition number six all right uh got it thank you yeah um uh so so the government does take this condition to be mandatory because that's that's the court's um um use of its sense sensing power the court is the one who said if mr veronin is homeless he must reside in an rrc that's that's uh the court's exercise of its authority and that's proper under stevens um now with respect to the time that is also this uh provision that not to exceed 365 days or up to 365 days that's also entirely consistent with this court's decision in stevens in stevens that the order was for um uh drug testing and the question was whether the district court erred by not setting either a specific number of drug tests on supervision or a maximum number and this court said well there was error because the court didn't set the maximum number it would have been okay to set a permissible range but the court did have to set the maximum and what this court did here consistent with with its statutory authority to um place order the defendant to be on residential re-entry for all or part of the period of supervision is the court said up to 365 days that's a permissible um setting of the time period under stevens um and that's what the court did here the third point that i want to address about the um the delegation uh um concern is that there are if the court does have concerns about it there are alternatives um to remand for resentencing um those alternatives could be as this court has done before you could find plain error and say it's nonetheless it's it's there's no effect on substantial rights and this court has done that with stevens error before the other thing the court could do is a limited remand to correct to tweak that particular condition to make it consistent with whatever the court identified as error but again here the government doesn't see error in that condition um now if did um did mr veronin expressly waive his right to a hearing yes yes uh he was asked uh by the district court uh do you give up your right to a hearing and he said i give up that right well he said no at one point and then he later said yes um go ahead um so i think there are so the district court in assessing whether defendant made a knowing and intelligent waiver can look at the totality of the circumstances the whole record and there are multiple things here in addition including but in addition to defendant statements the first thing is that when the court started the hearing he asked defense counsel how does client wish to proceed and she said i my understanding is mr veronin intends to admit the allegations and then she participated in eliciting her client's waiver and his his understanding of his right to the hearing so that's an indication to the district court that is part of the record a relevant part of the record that there were communications between defense counsel and her client prior to the hearing um and an agreement about how to proceed now mr veronin's comments during the hearing are consistent with that not only with the statement i give up that right uh but also with his uh admission almost instantly in response to questioning i admit i smoked marijuana um he's kind of proceeding with the game plan he's admitting the allegations against him and the the parts of the record that the government highlighted were and a expression or response to uh um court questioning and also just volunteering information that showed that he understood why he was there also the uspo violation report is part of the record that indicates whether the probation officer is reporting mr veronin's prior statements where he said i'm not going to stop using meth or he he didn't take a urine test because he record before this district court who was the same court at sentencing the same court in taking mr veronin's guilty plea on the substance that show that defendant understands but he's willfully failing to comply that's part of the record in this case what i mean can you address i mean as you know there are there are i mean you've pointed to some of the things he said at the hearing or at the proceeding but uh he also said a lot of things that really did not make any sense and that might lead a person to conclude that he didn't have any understanding of what was going on at what point does the district court have an obligation to conduct some further inquiry into whether whether the defendant really understands the proceeding waving well i mean so one one issue here is there there could be a claim um in some circumstances not here where the district court has an obligation to sue esponte um inquire into a defendant's competency that's not this case that's not a claim that defense counsel has raised or defendant has raised um so what the district court did here was and this is different than correa torres which is the only case that defendant cited on this point is engaged directly with defendant um inquired of defendant with the assistance of defense counsel about the waiver of the right to hearing and reviewed each of the the counts against the defendant and during those interactions the defendant was responding on the substance and the defendant was it was not mere nodding it was not acquiescence and counsel's representations there wasn't there was there was a colloquy that occurred and in the colloquy that occurred the defendant said things that indicated understanding he said some things that are difficult to categorize um i i would say the buckets are inaudible statements as well as dissatisfaction with application of the law um uh but nonetheless the reason the government focused on the sentences that it did is because they are volunteered complete whole sentence information that is responsive to the inquiry and responsive to the proceedings that the defendant was taking part in and i also do want to say this was a telephonic hearing but you get things from a telephonic hearing that you don't get from uh typed words on a page you get tone of voice articulation pauses um and and those are things that the district court uh was able to to pick up on as well let me um let me ask you the same question i asked your colleague let's assume that judge hatter shortly into this proceeding this hearing says oh goodness um you know number one the court reporter can't hear what's being said i mean this is obviously covid world hearings which we've all lived through at the trial court level and quite frankly they're a mess can be a mess um and let's suppose judge hatter threw up his hands and said i'm not going to proceed any further this morning i'm not comfortable with the state of mind of mr veronin and here's what i'd like to have happen we're going to continue this hearing we're going to have an in-person hearing a week from today was that even possible in november of 2020 were there in-person hearings being held in the central district of california do you know i do not know that off the top of my head it seems like that coded experience has been going on forever i don't know i suspect in november of 2020 if it was like most of the courthouses and then in the united states federal courthouses and particularly in california to my knowledge they probably weren't they were not okay this is as good as it was going to get uh other than maybe zoom um so um anyway okay that's i don't have any further questions uh and with that okay great uh counsel for mr veronin let's just give actually give her two i just got boosted by 100 your honors i just like to quickly address the issue of the decision stevens permitting the district court to set the maximum limit of drug tests that could be imposed on a defendant on supervision um and the court did that in stevens because of a specific statutory authority in 3583 i believe it's d that permitted the court based on the language in 3583 d that actually allowed district courts to set a maximum term um a maximum number of drug tests i'm sorry but we don't have any such similar statutory authority here permitting a district court to set the maximum term of residential re-entry and not specify a specific um term of residential re-entry to you know uh that a defendant needs to be subject to on supervision so i think it is still an improper delegation to the probation officer about the extent of a punitive sanction that the defendant might be subject to um and i'd also like to argue that on er 24 or i believe it's actually er 23 the standard condition of supervision um i think that just compiles discretion on discretion again as i've briefed you know the term homeless is subjective and subject to interpretation and here you know based on the probation officers you know interpretation of whether or not a house is you know permissible you know again the probation officer is permitted to sentence mr vernon into a custodial environment for you know one month two months three months um you know and lastly i understand this court's concern about what could happen on remand but i i truly believe an application of the fugitive disentitlement doctrine in this context where the court is effectively having to make fact findings in the first instance about mr vernon's mental state where he is um is highly problematic it's just not a clean application of the doctrine here and it would be you know a rather large expansion of it if it was to apply in this context again this court has twice um determined that they would not apply this doctrine in the context of abstention from supervision particularly where in united states versus gonzalez um the defendant hadn't fled the jurisdiction and that's that sentiment from united states versus gonzalez was you know affirmed in merguez olivares where he some showing that the defendant has actually hidden themselves from the jurisdiction of the court and you know that it was this jurisdictional issue not being here that really animated the concern about the disentitlement doctrine where the court wouldn't be able to enforce a judgment i think you know government council effectively conceded that he will probably be found and be brought back into the jurisdiction of the district court in this matter um and again that's because he is still here to the best of my knowledge um you know i can't say that i know for certain but i i am led to believe that he has been in contact with this probation officer as early as last week um and with that your honor i will submit can i ask one final question of either of you i looked at the original judgment in this case and if it's not in the record then i don't want to know but if it's in the record i'd like to know what was mr veronin's criminal history category the time of his original sentencing if it's in the record i want to know if it's not the record i don't want to know it's in the record your honor it's in the psr that i believe the government filed under steel he was in criminal history category six six all right thank you all right thank you both for your argument in this uh interesting case let's just say interesting issues no doubt thank you both for your briefing and your argument uh this matter is submitted
judges: OWENS, MILLER, Christensen